UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JOSHUA JAY BLAINE,<br><br>                    Movant,<br><br>          vs.<br><br>UNITED STATES OF AMERICA,<br><br>                    Respondent. | 4:17-CV-04138-KES<br><br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

This matter is before the court on the *pro se* motion by Joshua Jay Blaine to vacate, correct or set aside his sentence pursuant to 28 U.S.C. § 2255. See Docket No. 1.[1] The United States of America (hereinafter "government"), has moved to dismiss Mr. Blaine's § 2255 motion without holding an evidentiary hearing. See Docket No. 40. Mr. Blaine opposes the motion. See Docket No. 44. This matter was referred to this magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and pursuant to the October 16, 2014, standing order of the Honorable Karen E. Schreier, United States District Judge. The following is this court's recommended disposition.

---

[1] Within this opinion, the court cites to documents filed in this, Mr. Blaine's civil § 2255 action, by simply stating the Docket Number for the particular document. The court cites to documents filed in Mr. Blaine's underlying criminal action, United States v. Blaine, 4:15-CR-40069-KES (D.S.D.), by citing the Docket Number preceded by the designation "CR."

## FACTS

### A.    Southern Division Case

Mr. Blaine was indicted by a federal grand jury in the District of South Dakota, Southern Division, on June 2, 2015, and charged with the crime of being a felon in possession of two firearms on March 12, 2015: (1) a .22 caliber semi-automatic rifle and (2) a .22 caliber semi-automatic pistol.  See CR Docket No. 1.  An initial appearance was held on June 9, 2015, at which time the court appointed Timothy Langley of the Federal Public Defender's Office to represent Mr. Blaine.  See CR Docket No. 9.  On July 31, 2015, Mr. Blaine filed a petition to plead guilty without benefit of a plea agreement from the government.  See CR Docket No. 19.  He entered a plea of guilty pursuant to the petition on August 6, 2015.  See CR Docket No. 23.  Sentencing was set for October 26, 2015.  See CR Docket No. 24.

On October 26, Mr. Blaine failed to appear for his sentencing hearing and the district court issued an arrest warrant.  See CR Docket Nos. 31-33. Mr. Blaine was apprehended on November 2, 2015, and his sentencing hearing was rescheduled for November 9, 2015.  See CR Docket Nos. 35 & 36.  The district court sentenced Mr. Blaine to 115 months' imprisonment, to run concurrently with the as-yet-to-be imposed sentence in his state court case, CR115-1657, in the Second Judicial Circuit Court, Minnehaha County, South Dakota.  See CR docket No. 40.

Mr. Blaine thereafter timely filed a notice of appeal to the Eighth Circuit Court of Appeals.  See CR Docket No. 42.  Counsel James Eirinberg was

appointed to represent Mr. Blaine on appeal.  Mr. Eirinberg raised issues of ineffective assistance of counsel as well as the substantive reasonableness of the sentence imposed and alleged procedural sentencing errors.  Mr. Blaine filed a *pro se* supplemental brief asserting arguments pertaining to a civil action he had filed.  On August 15, 2016, the Eighth Circuit issued an opinion in which it declined to address the issues of ineffective assistance of counsel and the issues related to the civil action.  See CR Docket No. 52.  As to the alleged sentencing errors, it affirmed in all respects.  Id.   The court issued its mandate on September 6, 2016.  See CR Docket No. 54.

Mr. Blaine filed a motion to appoint counsel before the district court on December 21, 2016, explaining he wanted to petition the United States Supreme Court for a writ of certiorari.[2]  See CR Docket No. 56.  The district court denied the motion, explaining to Mr. Blaine he should contact the attorney appointed by the Eighth Circuit to represent him on appeal.  See CR Docket No. 57.

Mr. Blaine timely filed the instant § 2255 motion before this court on October 2, 2017.  See Docket No. 1.  In that motion, he indicates he did not pursue an appeal to the Supreme Court.  Id. at p. 2.

**B.    Northern Division Case**

On June 7, 2016, a federal grand jury in the District of South Dakota, Northern Division, indicted Mr. Blaine for being a felon in possession of a firearm in connection with a 12-gauge pump-action shotgun and ammunition

---

[2] Mr. Blaine's motion was dated December 18, 2016.  See CR Docket No. 56.

which occurred November 2, 2015.[3]  See United States v. Blaine, 1:16-CR-10021-RAL, Docket No. 1 (D.S.D.).  Lawyer Scott Kuck was appointed to represent Mr. Blaine in this case.  Id. at Docket No. 8.  On October 28, 2016, Mr. Blaine entered into a written plea agreement in which he agreed to plead guilty to the indictment.  See id. at Docket No. 23, p.3.  In return, the government agreed Mr. Blaine should get credit for acceptance of responsibility under the United States Sentencing Guidelines (USSG) and that the government would recommend a within-USSG sentence.  Id. at pp. 3-4.  Mr. Blaine waived his right to appeal in connection with this plea.  Id. at pp. 8-9.

Mr. Blaine entered a plea of guilty on October 31, 2016.  Id. at Docket No. 28.   Mr. Blaine was sentenced by the Honorable Roberto A. Lange, United States District Judge, on February 7, 2017, to 41 months' imprisonment.  Id. at Docket No. 40.  Twenty-four of those months were to run concurrent with the sentence Mr. Blaine received in his Southern Division case and 17 months were to run consecutive to that sentence.  Id.  No appeal was filed in the

---

[3] This Northern Division crime would have occurred between the time Mr. Blaine failed to appear for his sentencing in the Southern Division case (October 26, 2015), and the date he was apprehended on the district court's bench warrant (November 2, 2015) in the Southern case.  Mr. Blaine was arrested on November 2, 2015, in Watertown, South Dakota, which is within the Northern Division of the District of South Dakota.

Northern Division case, nor was a § 2255 motion filed as to that conviction. [4]

## C.    § 2255 Motion

### 1.    Ground One—Unreasonable Search & Seizure

In his current § 2255 motion, Mr. Blaine raises two grounds for relief. The events that preceded Mr. Blaine's federal indictment in the Southern Division case involved state law enforcement officers coming to Mr. Blaine's hotel room in Sioux Falls, South Dakota, to execute some outstanding state court arrest warrants.  See Docket No. 1 at pp. 8-14; Docket No. 44-1, 44-2, & 44-3.  Mr. Blaine asserts the officers met him outside his hotel room and arrested him there.  Docket No. 1 at pp. 8-14.  They then, according to Mr. Blaine, entered his hotel room without a warrant.  Id.  Later, based on observations the officers made during this warrantless entry, the officers obtained a state court search warrant.  Id.  Among the items seized by police in their search of Mr. Blaine's hotel room were the .22 caliber semi-automatic rifle and pistol that were the subject of the Southern Division indictment.  See Docket No. 1 at pp. 8-14; Docket No. 44-1, 44-2, & 44-3.  Mr. Blaine asserts a claim of unreasonable search and seizure in violation of his Fourth and Fourteenth Amendments in connection with these events.  Id.

---

[4]Although a grant of habeas relief in this case would not result in Mr. Blaine's immediate release due to the existence of the sentence imposed in his Northern Division case, that fact does not render the instant § 2255 motion moot.  It is undisputed that if the Southern Division sentence were vacated, Mr. Blaine would be released from prison several years sooner than would otherwise be the case.  This is sufficient to create a case or controversy for purposes of adjudicating Mr. Blaine's § 2255 motion.

###### 2.    Ground Two—Ineffective Assistance of Counsel

In his second ground for relief, Mr. Blaine alleges the following actions by his counsel constituted ineffective assistance of counsel in violation of the Sixth Amendment:

1.    failure of appellate counsel to raise the Fourth and Fourteenth Amendment search issues on appeal to the Eighth Circuit (as discussed above in Ground 1).

2.    failure of trial counsel to file a motion to suppress the results of the unreasonable search of his hotel room, depriving Mr. Blaine of his Fourth and Fourteenth Amendment rights as well as his rights to "litigate and allocute."

3.    trial counsel was ineffective in failing to argue that the firearms were not found on his person or in the immediate area of his person upon his arrest.

4.    failure of trial counsel to allow Mr. Blaine to review the pre-sentence investigation report ("PSR"), to object to the PSR, to argue against enhancements to his sentence set forth in the PSR, and to review the addendum to the PSR prior to sentencing.

5.    counsel was ineffective in advising Mr. Blaine not to try to withdraw his plea of guilty.

6.    counsel was ineffective in failing to object to the PSR's recommendation that he not receive credit for acceptance of responsibility under the USSG.

7.    counsel was ineffective in failing to assist Mr. Blaine in cooperating with the government.

See Docket No. 1 at pp. 15-20.

The government moves to dismiss Mr. Blaine's § 2255 motion.  See Docket No. 40.  As to ground one, the government argues Mr. Blaine has procedurally defaulted the claim and has not proven cause or prejudice to excuse the default.  See Docket No. 41 at pp. 7-10.  The government also

moves to dismiss ground two for various reasons.  Id. at pp. 11-19.  Mr. Blaine

opposes the government's motion.  See Docket No. 44.  The parties' specific

arguments are addressed in more detail below.

**DISCUSSION**

**A.    Scope and Procedure Applicable to a § 2255 Motion**

Section 2255 of Title 28 of the United States Code provides, in relevant

part, as follows:

> (a)  A prisoner in custody under sentence of a court established by
> Act of Congress claiming the right to be released upon the ground
> that the sentence was imposed in violation of the Constitution or
> laws of the United States, or that the court was without
> jurisdiction to impose such sentence, or that the sentence was in
> excess of the maximum authority authorized by law, or is
> otherwise subject to collateral attack, may move the court which
> imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Section 2255 of Title 28 of the United States Code was enacted to

supersede habeas corpus practice for federal prisoners.  Davis v. United States,

417 U.S. 333, 343-44 (1974).  Prior to the enactment of § 2255, habeas claims

had to be brought in the district where the prisoner was confined, resulting in

overburdening those districts where federal correctional institutions were

located and presenting logistical issues because the record in the underlying

criminal case was often in a distant location.  United States v. Hayman, 342

U.S. 205, 212-16 (1952).  The enactment of § 2255 resolved these issues by

requiring that the motion be filed in the sentencing court.  Id.

The scope of a § 2255 motion is seemingly broader than the scope of a

habeas petition, the latter of which is typically limited to allegations of a

constitutional dimension.  Section 2255 allows a federal prisoner to "vacate, set aside or correct" a federal sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  See 28 U.S.C. § 2255.  Where the allegation for relief is *not* based on a violation of a Constitutional right or an assertion that the court was without jurisdiction, the Supreme Court has read a "fundamentality" requirement into § 2255--relief is available for only those errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure."  Hill v. United States, 368 U.S. 424, 428 (1962); see Peguero v. United States, 526 U.S. 23, 27-30 (1999).

Generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal.  United States v. Frady, 456 U.S. 152, 167-68 (1982); McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001).  When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either:  (1) actual innocence or (2) that the procedural default should be excused because there was both cause for the default and actual prejudice to the petitioner.  Bousley v. United States, 523 U.S. 614, 621-22 (1998); McNeal, 249 F.3d at 749.  Therefore, barring a claim of actual

innocence, a petitioner must show both cause for why he failed to raise an issue on direct appeal as well as actual prejudice caused by the alleged errors.

Appellate courts generally refuse to review claims of ineffective assistance of counsel on direct appeal; such claims are, therefore, properly addressed for the first time in a § 2255 motion such as the one here.  See United States v. Lee, 374 F.3d 637, 654 (8th Cir. 2004) (ineffective assistance of counsel claims are not generally cognizable on direct appeal and will be heard only to prevent a miscarriage of justice or in cases where the district court has developed a record on the issue).  Therefore, no procedural default analysis is required before examining a claim of constitutionally-deficient counsel.

## B.    Ground One

Ground one encompasses a variety of arguments based on the alleged unreasonable search and seizure which occurred at Mr. Blaine's hotel room. These are all claims that could have been raised in a direct appeal.  Because Mr. Blaine did not raise these issues in his direct appeal, he has procedurally defaulted these claims.  Frady, 456 U.S. at 167-68; McNeal, 249 F.3d at 749. Because the claims are procedurally defaulted, Mr. Blaine must either establish actual innocence to excuse his default, or he must show cause which excuses the default and actual prejudice.  Bousley, 523 U.S. at 621-22; McNeal, 249 F.3d at 749.

In his response in opposition to the government's motion to dismiss, Mr. Blaine merely asserts that his ineffective assistance of counsel claims are not procedurally defaulted.  See Docket No. 44 at pp. 4, 6.  He never addresses

the government's argument that his claim in Ground One is procedurally defaulted.  Id.  Mr. Blaine never asserts any facts or argument in support of establishing cause and prejudice.  See Docket No. 44.  Nor does he assert his actual innocence.  Id.

The court agrees that Mr. Blaine's Ground One is procedurally defaulted. The burden is on Mr. Blaine to establish some gateway through which the court may entertain this procedurally defaulted claim.  Because he does not carry that burden, this court respectfully recommends that the government's motion to dismiss Ground One be granted.  Such dismissal should be a dismissal with prejudice.  Armstrong v. Iowa, 418 F.3d 924, 926-27 (8th Cir. 2005) (dismissal with prejudice is appropriate where the ground for dismissal is procedural default).

## C.     Ground Two--Ineffective Assistance of Counsel Claims

### 1.     Effect of Mr. Blaine's Plea of Guilty

When a § 2255 petitioner has been convicted in his direct criminal proceedings by entering a guilty plea, the scope of issues available to him to be raised in habeas proceedings is curtailed.  The Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in [McMann v. Richardson, 397 U.S. 759 (1970)].

> A guilty plea, voluntarily and intelligently entered, may not be
> vacated because the defendant was not advised of every
> conceivable constitutional [issue] he might have to the charge, no
> matter how peripheral such a plea might be to the normal focus of
> counsel's inquiry. And just as it is not sufficient for the criminal
> defendant seeking to set aside such a plea to show that his counsel
> in retrospect may not have correctly appraised the constitutional
> significance of certain historical facts, . . . it is likewise not
> sufficient that he show that if counsel had pursued a certain
> factual inquiry such a pursuit would have uncovered a possible
> constitutional infirmity in the proceedings.

Tollett v. Henderson, 411 U.S. 258, 267 (1973).

The Supreme Court has explained why a guilty plea cuts off all constitutional claims that predate a plea. Pleas are necessarily based on imperfect knowledge of the law and facts—one can only know what the result of a full-blown jury trial will be after the trial has been had, and even then, truth is still often in dispute. McMann, 397 U.S. 769-70. If a defendant admits his commission of a crime, upon good faith, reasonably competent advice from his counsel, the defendant assumes the risk that his attorney might be wrong about the facts or the outcome of a legal issue. Id. at 774.

The issue presented in habeas proceedings is not whether—in retrospect--counsel was right or wrong about a certain fact or legal analysis, but rather, whether the defendant's plea was made voluntarily and intelligently and upon advice from his attorney that was "within the range of competence demanded of attorneys in criminal cases." Id. at 770-71. Therefore, a defendant who pleaded guilty because of a prior coerced confession that he believed would be used against him at trial is not entitled to an evidentiary

11

hearing in a habeas proceeding without showing other, extenuating circumstances.  Id. at 771.

A voluntary and knowing plea is not transformed into a coerced plea simply because the defendant pleaded guilty to obtain a lesser sentence than the maximum possible penalty that would have been applicable if defendant had been convicted at trial.  Brady v. North Carolina, 397 U.S. 742, 751 (1970); Parker v. North Carolina, 397 U.S. 790, 795 (1970).  Guilty pleas are valid if the court record affirmatively discloses the plea was both voluntary and intelligent.  Boykin v. Alabama, 395 U.S. 238, 242 (1969).

A plea is voluntary if it is made by a defendant who is "fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel," and so long as the plea was not induced by threats, misrepresentation, or by promises that are improper, unfulfilled, or unfulfillable.  Brady, 397 U.S. at 755.

A plea is intelligently made if the defendant was aware of the nature of the charge against him, and he was mentally competent and in control of his mental faculties.  Brady, 397 U.S. at 756.  A plea is not rendered unintelligently made simply because, long after the plea was entered, the defendant realizes his cost-benefit analysis as to whether to go to trial or to plead guilty did not correctly take into account every relevant factor which entered into his decision.  Id. at 756-57.

Where a habeas petitioner collaterally attacks his plea by arguing that counsel was ineffective in advising petitioner to plead guilty, the petitioner

must show not only that his counsel's performance was deficient, he must also show that he was prejudiced by counsel's substandard advice.  Hill v. Lockhart, 474 U.S. 52, 58-59 (1985) (quoting Strickland v. Washington, 466 U.S. 668 (1984)).  In the context of a guilty plea, in order for a habeas petitioner to demonstrate prejudice under Strickland, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill, 474 U.S. at 59.

Where the allegation of ineffectiveness centers on a "failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the [petitioner] by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led  counsel to change his recommendation as to the plea."  Id.  "This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial."  Id.  "[T]hese predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.' "  Id. (quoting Strickland, 466 U.S. at 695).

## 2.    Pre-Plea Allegations of Ineffectiveness are Barred

The following exchanges and solemn statements under oath took place at Mr. Blaine's change of plea hearing.  From these facts, the court concludes Mr. Blaine's plea was voluntary, knowing and intelligent.  As such, his plea of

13

guilty bars him from raising issues as to ineffective assistance of counsel which allegedly occurred prior to his plea.

Mr. Blaine was placed under oath at the beginning of the hearing.  See CR Docket No. 46 at p. 2 (change of plea hearing transcript).  Thereafter he told the court he understood he was under an obligation to tell the truth.  Id.

Mr. Blaine stated he was 32 years old and had completed one semester of college.  Id. at p. 3.  He averred he had not been treated for any mental illness or for addiction to narcotic drugs.  Id.  He stated he was not then under the influence of any drug, medication or alcoholic beverage.  Id.  He indicated he was fully satisfied with the advice and representation he had received from Mr. Langley.  Id.

Mr. Blaine told the court he had read the petition to plead guilty and had discussed that document with his counsel.  Id. at p. 4.  He stated he understood all the terms in the document.  Id.  He stated no one had made any promises to induce him to sign the petition or to enter a plea of guilty in court that day.  Id.  He also assured the court that no one had threatened or attempted to force him to plead guilty.  Id.  He said under oath that he was pleading guilty of his own free will because he acknowledged he was guilty.  Id.

Mr. Langley told the court that he had conveyed all government plea offers to his client.  Id. at pp. 4-5.

The court advised Mr. Blaine he would lose many important civil rights by pleading guilty, including the right to vote, the right to hold public office, the

right to serve on a jury, and the right to possess or carry firearms. Id. at p. 5. Mr. Blaine indicated he understood that consequence. Id.

The court informed Mr. Blaine the maximum penalty for the crime was 10 years' imprisonment and a $250,000 fine. Id. The court also informed Mr. Blaine that if he received a sentence of incarceration, he would have to serve a period of supervised release after he got out of prison. Id. The court informed Mr. Blaine if he violated the terms of his supervised release, his release could be revoked and he could be sentenced to an additional two years in prison. Id. The court informed Mr. Blaine that he would forfeit any interest in the .22 caliber semi-automatic rifle and pistol that were the subject of the indictment. Id. at p. 6. Mr. Blaine told the court he understood the maximum penalties that might flow from a guilty plea. Id.

The court then explained that if Mr. Blaine pleaded guilty, the court would order a PSR to be written and the court would use the PSR to determine Mr. Blaine's advisory USSG range at sentencing after resolving any objections to the PSR. Id. The court asked Mr. Blaine if his lawyer had gone over the USSG with him. Id. Mr. Blaine indicated counsel had done that. Id.

The court informed Mr. Blaine that it would also consider whether his sentence should be below or above the USSG range. Id. at p. 7. Mr. Blaine told the court he understood his sentence might be above or below the USSG range. Id.

The court told Mr. Blaine that parole had been abolished in federal court. Id. Because of that, the court explained Mr. Blaine would not be released from

15

prison early on parole.  <u>Id.</u>  Mr. Blaine told the court under oath he understood that.  <u>Id.</u>

The court informed Mr. Blaine he had a right to continue on with his plea of "not guilty" and to have a jury trial.  <u>Id.</u> at pp. 7-8.  The court told Mr. Blaine it would instruct the jury at trial that Mr. Blaine was presumed innocent and that the burden was on the government to prove his guilt beyond a reasonable doubt.  <u>Id.</u> at p. 8.

If Mr. Blaine elected to go to trial, the court informed him he would have the assistance of counsel to help with his defense, and that the court would appoint counsel if Mr. Blaine could not afford to hire a lawyer himself.  <u>Id.</u>  At trial, the court informed Mr. Blaine he would have a right to see and hear all of the witnesses who testified and to have them cross-examined in his defense.  <u>Id.</u>  The court informed Mr. Blaine he had a right not to testify, but he could voluntarily give up that right.  <u>Id.</u>  The court told Mr. Blaine he would have the right to use the court's subpoena power to make sure witnesses he wanted to call on his behalf at trial came to court.  <u>Id.</u>  The court told Mr. Blaine if he decided not to testify or not to put on any evidence, the court would tell the jury that they could not use those facts against him, that the burden remained on the government to prove its case beyond a reasonable doubt.  <u>Id.</u>

The court informed Mr. Blaine if he entered a plea of guilty that day, there would not be a trial, and he would be giving up all the other rights the court just described.  <u>Id.</u>  Mr. Blaine indicated he understood this.  <u>Id.</u> at p. 9.

The court informed Mr. Blaine if he did go to trial, the government would have to prove beyond a reasonable doubt three essential elements in order to show Mr. Blaine committed the crime of being a felon in possession of a firearm. Id. Mr. Blaine told the court he understood the crime he was being charged with and what the government would have to prove if he went to trial. Id.

The petition to plead guilty signed by Mr. Blaine contained a statement of facts in support of his plea. Id. at pp. 9-10. The court asked Mr. Blaine if he read that statement before signing it. Id. Mr. Blaine told the court he had read it. Id. The court asked Mr. Blaine if all the facts stated therein were true. Id. at p. 10. Mr. Blaine stated under oath that those facts were true. Id. The statement of facts recited the following:

> The undersigned Defendant, Joshua Jay Blaine, agrees that he was convicted of three state felony offenses in South Dakota in 2003 and 2007. On March 12, 2015, and for several days previous, he occupied, and possessed a key to, Room 22 at the Arena Motel in Sioux Falls, SD. He shared the room with two other persons: April Jumping Elk, who was physically present with him throughout these several days; and Justin Hazen, who was in the process of moving out of another motel and who was storing personal property in Room 22, but who was not staying there overnight. Defendant Blaine was aware at the time that the .22 caliber rifle described in the Indictment was in a soft guitar case which belonged to Mr. Hazen and which was located within Room 22, although Defendant Blaine did not handle the rifle while it was stored in Room 22. Defendant Blaine was also aware at the time that the .22 caliber pistol described in the Indictment was in a backpack belonging to Ms. Jumping Elk which she had with her in Room 22, and Defendant Blaine did briefly handle the handgun in Room 22 with Ms. Jumping Elk's permission. Defendant Blaine accepts the government's evidence that the firearms and ammunition seized from Room 22 had been manufactured outside South Dakota and that they had therefore been transported across state lines at some point before Defendant Blaine temporarily and

> jointly possessed them.  Defendant Blaine consents to forfeiture of
> all interest, if any, he has in the two firearms and the ammunition,
> and he waives all notice of civil process to which he would be
> otherwise entitled.  He is unable, however, to consent to or waive
> anything on behalf of third parties, including Ms. Jumping Elk and
> Mr. Hazen.

See CR Docket No. 19 at pp. 4-5, ¶ 14.

Mr. Blaine then entered a plea of guilty to the indictment.  See CR Docket No. 46 at p. 10.  The court found Mr. Blaine to be competent and capable of entering an informed plea, that he was aware of the nature of the charge and the consequences of his plea, and that his plea of guilty was made knowingly and voluntarily and was supported by an independent basis in fact. Id.  The court accepted Mr. Blaine's plea and adjudged him guilty of the offense.  Id.

The court then explained to Mr. Blaine that the next step would be the preparation of the PSR, which the court ordered to be completed by September 21.  Id. at pp. 11, 14-15.  The court told Mr. Blaine to review the PSR carefully when he received it.  Id.  The court informed Mr. Blaine he would have a right to make corrections and formal objections to the report if there were things he believed to be in error and the deadline for objections was October 5.  Id. at pp. 11, 14.  Finally, the court told Mr. Blaine his sentencing hearing would take place on October 26, 2015, at 9:00 a.m.  Id. at p. 12.

Because Mr. Blaine had a sentencing hearing pending in state court, the court returned him to state custody.  There was discussion on the record about whether the court might entertain a motion pre-sentencing for Mr. Blaine to be released to attend substance abuse treatment if the state court sent him to

18

treatment.  On September 18, 2015, defense counsel moved the court for an order removing the federal hold on Mr. Blaine so he could attend treatment.  See CR Docket No. 25.  The PSR was filed in the court's docket on September 21.  See Docket No. 26.  The court granted the motion to remove the federal hold on September 22, 2015.  See CR Docket No. 27.  Presumably, Mr. Blaine was released on that date.  Defense counsel filed objections to the PSR on October 5, 2015.  See Docket No. 28.

In his pleadings in this § 2255 matter, Mr. Blaine never asserts his plea of guilty was not knowing, voluntary and intelligent.  He never asserts he wished to go to trial and was tricked or forced to plead guilty.  He never alleges that, but for counsel's allegedly deficient conduct, he would have insisted on going to trial.[5]  The court finds on the above record that Mr. Blaine's plea of guilty was constitutionally valid.  As such, the court recommends denying relief on the following claims of ineffective assistance of counsel which occurred prior to the plea:

> 2.    failure of trial counsel to file a motion to suppress the fruits of the search of Mr. Blaine's hotel room (includes Fourth Amendment, Fourteenth Amendment, and rights to litigate and allocate).

> 3.    failure of counsel to argue Mr. Blaine did not possess the .22 caliber semi-automatic rifle or pistol because they were not found on his person or in the immediate area of his person upon his arrest.

> 7.    failure to assist Mr. Blaine in cooperating with the government.

---

[5] Instead, Mr. Blaine posits the government would have dismissed the indictment against him.  See Docket No. 44 at pp. 21, 30.

### 3.   Post-Plea Allegations of Ineffectiveness

### a.   The Strickland Standard

Mr. Blaine alleges his trial and appellate counsel were deficient in representing him in various ways that post-date his plea of guilty.  The Strickland standard as described below applies to these claims.

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel.  The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.'" Strickland v. Washington, 466 U.S. 668, 698 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)).  Strickland is the benchmark case for determining if counsel's assistance was so defective as to violate a criminal defendant's Sixth Amendment rights and require reversal of a conviction.  Id. at 687.  "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-688.  The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the judgment.  Id. at 691.  The defendant must show "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.  In sum, a defendant must satisfy the following two-prong test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so

20

serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id. at 687.

"There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002).  It is the petitioner's burden to overcome this presumption, and a "petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." Id.  Judicial scrutiny of attorney performance is highly deferential, with a strong presumption that counsel's conduct falls within the range of reasonable professional conduct.  Strickland, 466 U.S. at 698.

### b.    Application of Strickland to Movant's Claims

#### i.    Appellate Counsel was Ineffective in Failing to Raise Fourth Amendment Unreasonable Search Issue

Mr. Blaine argues his appellate counsel was ineffective because counsel did not argue on appeal that the search of his hotel room violated the Fourth Amendment.  "The Sixth Amendment does not require that counsel raise every colorable or non-frivolous claim on appeal." New v. United States 652 F.3d 949, 953 (8th Cir. 2011) (citing Roe v. Delo, 160 F.3d 416, 418 (8th Cir. 1998)). "[A]bsent contrary evidence, we assume that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy." Id. (quoting United States

21

v. Brown, 528 F.3d 1030, 1033 (8th Cir. 2008)).  "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal."  Id. at 954 (quoting Brown, 528 F.3d at 1033).

Failure to raise a weak argument on appeal is not deficient conduct by appellate counsel.  New, 652 F.3d at 954.  Here, if appellate counsel had raised the Fourth Amendment issue on appeal, it would have been dismissed out of hand by the Eighth Circuit for the same reasons discussed above—Mr. Blaine had entered a knowing, voluntary and intelligent plea of guilty.  Without having grounds to invalidate the plea, or without a conditional plea, the Eighth Circuit would not look behind the plea to the Fourth Amendment issue.  See Class v. United States, ___ U.S. ___, 138 S. Ct. 798, 803-05 (2018) (noting that the Court's precedent prevented raising on direct appeal "case-related constitutional defects that occurred prior to the entry of the guilty plea.") (quoting Blackledge v. Perry, 417 U.S. 21, 30 (1974)) (punctuation altered). The court recommends denying § 2255 relief on the grounds that appellate counsel failed to raise the issue of the search of Mr. Blaine's hotel room. It was not deficient for counsel to fail to raise a losing argument and, because it was a losing argument, Mr. Blaine cannot show prejudice.

**ii.    failures of trial counsel relating to the PSR**

Mr. Blaine alleges counsel did not show him the PSR prior to sentencing. Trial counsel states under oath that he went over the PSR with Mr. Blaine on September 25, 2015.  See Docket No. 20 at p. 7, ¶ 11.  However, this apparent

discrepancy does not create a credibility issue requiring an evidentiary hearing to resolve.

At the sentencing hearing, the court asked trial counsel if he had reviewed the PSR with Mr. Blaine.  See CR Docket No. 47 at p. 3 (sentencing hearing transcript).  Counsel indicated he had done so.  Id.  Mr. Blaine was given an opportunity to speak to the court during the hearing, and he never contradicted counsel's representation.  Id. at pp. 16, 24.

A § 2255 claim can be denied without holding an evidentiary hearing if, inter alia, the movant's allegations cannot be taken as true because they are contradicted by the record.  Hyles v. United States, 754 F.3d 530, 534 (8th Cir. 2014).  "If [the court] can determine from the motion and the supporting record in the case that [the movant] is not entitled to § 2255 relief, then no hearing was, or is now, required."  Saunders v. United States, 236 F.3d 950, 952 (8th Cir. 2001).  Mr. Blaine's tacit admissions at the sentencing hearing that he had reviewed the PSR with trial counsel contradict his current statements to the contrary.  Mr. Blaine's current statement cannot be taken as true because it is contradicted by the record.

It is unclear from Mr. Blaine's § 2255 motion whether he alleges trial counsel was ineffective in other ways relating to the PSR.  See Docket No. 1 at p. 17, ¶ 4.  It appears Mr. Blaine argues that because counsel did not allow Mr. Blaine to review the PSR, Mr. Blaine was deprived of his opportunity to object to the PSR, to argue against enhancements to the PSR, and to review addendum materials to the PSR before sentencing.  Id.  However, Mr. Blaine's

23

§ 2255 motion can also be read to mean that he is alleging *counsel* failed to object, failed to argue against enhancements, and failed to review the addendum and was, therefore, ineffective.  To the extent Mr. Blaine may be alleging the latter, the court addresses such claims.

Firstly, vague allegations cannot sustain a claim for habeas relief.  Voytik v. United States, 778 F.2d 1306, 1308 (8th Cir. 1985).  Mr. Blaine never specifies what information counsel should have objected to, what enhancements should have been resisted, and what information in the addendum was prejudicial to him.  Without further specifics, the court cannot conclude that counsel's "failure" to do these things prejudiced Mr. Blaine.  The burden is on Mr. Blaine to show prejudice from counsel's allegedly deficient actions.  Therefore, a failure of proof accrues to Mr. Blaine's detriment.

Secondly, counsel did file objections.  See CR Docket No. 28. Unfortunately, most of those had to be withdrawn after Mr. Blaine absconded prior to sentencing and committed a new firearms and new drug offense.  See CR Docket No. 47 at pp. 3-4 (sentencing hearing transcript).

As to enhancements, Mr. Blaine's base offense level under the USSG was enhanced because the pistol had an obliterated serial number.  See CR Docket No. 37 at p. 7, ¶ 23 (PSR).  In addition, an enhancement was assessed because there were trafficking quantities of drugs in Mr. Blaine's hotel room upon his arrest.  Id. at ¶ 24.  Finally, there was an enhancement for obstruction of justice because Mr. Blaine absconded.  Id. at ¶¶ 17, 27.  Mr. Blaine does not specify which of these enhancements trial counsel should have resisted.

Finally, regarding the addendum to the PSR, the PSR author merely indicated in the one-page document that additional information was added in paragraphs 3, 5-6, 17, 20, 27, 30, 59, and 68 to take into account "the new circumstances of the defendant," i.e. his absconding and committing new offenses.  See CR Docket No. 38.  The author of the PSR indicated that the USSG range calculation remained the same as in the original addendum and original PSR.[6]  Id.

The burden is on Mr. Blaine to demonstrate that he was prejudiced by counsel's allegedly deficient actions.  Because Mr. Blaine never provides specifics as to objections, enhancements and the addendum to the PSR which he asserts counsel should have attacked, he does not carry his burden to show prejudice.

Finally, Mr. Blaine argues that counsel was ineffective for failing to object to the PSR's recommendation that he be denied credit for acceptance of responsibility.  See Docket No. 1 at p. 18.  In his PSR interview, Mr. Blaine tried to minimize his criminal involvement.  See CR Docket No. 37 at p. 6, ¶ 18.  However, the details of the investigation showed at the time of his arrest Mr. Blaine had a key chain attached to his wallet.  Id. at p. 5, ¶ 12.  One of the keys in Mr. Blaine's possession went to a gun lock for one of the guns located

---

[6] The initial PSR final version of the PSR was filed with the court on October 22, 2015, by which time Mr. Blaine had already absconded.  See CR Docket No. 29.  That conduct, which formed the basis for the obstruction of justice enhancement, was included in the initial final PSR.  Id. at p. 6, ¶ 16.  That is why the USSG range remained the same in the intial final PSR and the amended final PSR.  The *draft* PSR, filed September 21, 2015, did not contain an enhancement for obstruction of justice.  See CR Docket No. 26 at p. 6, ¶ 15.

in his hotel room.  Id.  Another key went to a safe located in the hotel room which contained ammunition, methamphetamine and other drug distribution materials.  Id.  Furthermore, the investigation showed Mr. Blaine's girlfriend had purchased the pistol six days prior to Mr. Blaine's arrest; the firearm, the box for the firearm, and ammunition were all in Mr. Blaine's hotel room at the time of his arrest.  Id. at ¶ 14.  In addition, the pistol had a serial number on it when the girlfriend purchased the gun; in the six days between its purchase and Mr. Blaine's arrest, the serial number had been obliterated.  Id.

The icing on the cake was several recorded visits Mr. Blaine had with females while he was in jail in which he admitted everything in the hotel room belonged to him.  Id. at p. 6, ¶ 15.  He admitted having just sold Ms. Jumping Elk some drugs immediately prior to police arriving.  Id.  And he indicated he had three additional firearms in the community which he needed to get.  Id.

The PSR author noted that the factual basis statement accompanying Mr. Blaine's petition to plead guilty was contradicted by his own admissions and by the details of the investigation.  Id. at p. 6, ¶ 18.  In addition to all the above contradictions, Mr. Blaine told the PSR author that the hotel room was in Mr. Hazen's name, whereas the investigation had revealed the room was rented in Mr. Blaine's own name.  Id. at ¶¶ 18-19.

Trial counsel *did* object to the PSR's recommendation that Mr. Blaine not receive credit for accepting responsibility.  See CR Docket No. 28 (stating Mr. Blaine objected "to the withholding of credit for acceptance of responsibility in paragraphs 16-17 and 27" of the original PSR).  Therefore, trial counsel did

exactly what Mr. Blaines alleges he should have done—object to the withholding of credit for acceptance of responsibility.  There can be, then, no deficient conduct by counsel.  Given the above recitation of lies, half-truths and contradictions amply supporting the PSR's recommendation, Mr. Blaine would be hard-pressed to show prejudice even if counsel had failed to object.  For all the reasons discussed in this subsection, this court respectfully recommends denying § 2255 relief to Mr. Blaine on all his claims of ineffectiveness associated with the PSR.

### iii.    failure to recommend withdrawing the plea

Mr. Blaine asserts he had a "justified reason to withdraw" his plea of guilty, namely that the government did not have fingerprints or DNA showing that he had actually touched either firearm.  See Docket No. 1 at p. 17.  Based upon his "justified reason," Mr. Blaine asserts counsel was ineffective for not recommending to him that he (attempt) to withdraw his plea.

Trial counsel submitted an affidavit in which he acknowledged Mr. Blaine had some degree of "buyer's remorse" after submitting his petition to plead guilty and asked whether he should attempt to withdraw his plea based on the absence of fingerprint and DNA evidence.  See Docket No. 20 at p. 6, ¶ 9. Counsel explained to Mr. Blaine that the government did not have to prove he had physically touched either gun.  Id.  Counsel went through the overwhelming circumstantial evidence that Mr. Blaine possessed the guns:  he had been living in the hotel room for several days, the key to the handgun's trigger lock and the key to the safe containing ammunition were on

27

Mr. Blaine's key ring, and at the time of Mr. Blaine's arrest at the hotel room, one of the firearms was in plain view in the hotel room.  Id.  By pleading guilty instead of facing a certain conviction at trial, counsel believed Mr. Blaine would receive credit for acceptance of responsibility and receive a more lenient sentence.  Id.  This constitutes trial strategy and is virtually unassailable.

Nor was counsel wrong in his assessment of the overwhelming nature of the evidence.  Counsel had, at this point in the litigation, not yet received further details from the government.  Namely, that Mr. Blaine had admitted in jail recordings of conversations between himself and female visitors that (1) everything in the hotel room belonged to him, (2) that he was involved in the drug trade, and (3) that he owned three other guns not yet confiscated by police that he intended to reduce to his possession.  Had Mr. Blaine availed himself of trial, the outcome was all but predetermined.

Even if Mr. Blaine were able to show that counsel's advice not to attempt to withdraw his guilty plea was deficient, in the context of a guilty plea, he must show that but for counsel's erroneous advice, he would not have pleaded guilty and would have insisted on going to trial.  Hill, 474 U.S. at 59.  Neither in his § 2255 petition nor in his response in opposition to the government's motion to dismiss does Mr. Blaine state that he would have insisted on going to trial.[7]  Thus, he has failed to demonstrate the prejudice prong of Strickland as

---

[7] Instead, Mr. Blaine posits the government would have dismissed charges against him.  See Docket No. 44 at pp. 21, 30.

well as failing to show deficient conduct by counsel.  Accordingly, this court respectfully recommends no relief be granted on this ground under § 2255.

**D.    No Evidentiary Hearing is Warranted**

A § 2255 motion can be denied without holding an evidentiary hearing if (1) the movant's allegations, even if true, would not entitle him to relief; or (2) the movant's allegations cannot be taken as true because they are contradicted by the record, they are inherently incredible, or they are conclusions rather than factual statements.  Hyles, 754 F.3d at 534.  "If [the court] can determine from the motion and the supporting record in the case that [the movant] is not entitled to § 2255 relief, then no hearing was, or is now, required."  Saunders, 236 F.3d 950 at 952.

Here, the court concludes that no evidentiary hearing is warranted. Ground One of Mr. Blaine's § 2255 motion is procedurally defaulted.  As to Ground Two, for each allegation the court has concluded Mr. Blaine failed to show either deficient performance by counsel, prejudice, or both.  Therefore, there are no issues of fact or credibility to be determined by holding an evidentiary hearing.  The court recommends no such hearing be held.

**CONCLUSION**

Based on the foregoing law, facts and analysis, this magistrate judge respectfully recommends that the government's motion to dismiss [Docket No. 40] be granted and all of Mr. Blaine's claims for relief be dismissed.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 9th day of August, 2018.

BY THE COURT:

_____
VERONICA L. DUFFY
United States Magistrate Judge